UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JUAN ERNESTO BAIRES BENITEZ (A#240-174-042),

Petitioner,

v.

WARDEN, CALIFORNIA CITY CORRECTIONAL CENTER,

Respondent.

No. 1:26-cv-03780-DC-SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Respondent contends that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) as an alleged member of MS-13, which has been designated as a "terrorist organization" under the Immigration and Nationality Act. However, because the notice to appear in Petitioner's removal proceedings does not charge him with a terrorism-related inadmissibility ground, Respondent cannot subject Petitioner to mandatory detention on that uncharged basis. Petitioner is instead subject to detention under 8 U.S.C. § 1226(a), but has been detained for more than seven months without the substantial procedural protections required by that statute. The undersigned accordingly finds that Petitioner's detention is unlawful and recommends that Petitioner be immediately released.

////

## I. Factual and Procedural History

Petitioner is a native and citizen of El Salvador who entered the United States on or about May 22, 2010 without being inspected by immigration officials. ECF No. 1 at 4; ECF No. 6-1 at 3. Since then, he has continuously resided in this country. Immigration and Customs Enforcement ("ICE") arrested Petitioner in Mendota, California on April 13, 2026. ECF No. 1 at 1. The same day, ICE served him with a Notice to Appear, charging him as removable pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), as "a [non-citizen] present in the United States without being admitted or paroled," and placed him in removal proceedings. See ECF No. 6-1 at 2; ECF No. 16-1 at 1-2. An immigration judge ordered Petitioner removed on October 29, 2026. ECF No. 16-2. Petitioner reserved his right to appeal the decision. Id.

Petitioner is currently detained at the California City Detention Facility located in this judicial district. He filed this § 2241 petition challenging his ongoing immigration detention without being provided an individualized bond hearing to determine if his detention is warranted based on flight risk or a danger to the community. ECF No. 1. For this reason, he alleges that his detention violates the Immigration and Nationality Act (count one) and the Fifth Amendment Due Process Clause (count two). ECF No. 1.

At the time Petitioner filed the § 2241 petition, he also filed a motion for a temporary restraining order ("TRO"). ECF No. 2. On June 18, 2026, District Judge Coggins denied the TRO motion, finding Petitioner had "not demonstrated a likelihood of success on the merits of his claim" because his "alleged affiliation with MS-13 likely subjects him to mandatory detention under 8 U.S.C. § 1226(c)" and he did not dispute the allegations in his reply. ECF No. 8. Judge Coggins referred this case to the undersigned for further proceedings and further briefing on the § 2241 followed. ECF No. 8.

In the answer to the petition, Respondent contends that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c) based on his membership in MS-13, which has been formally designated as a terrorist organization by the Secretary of State pursuant to 8 U.S.C. § 1189. ECF No. 10 at 3. Respondent further asserts that Petitioner's detention is not prolonged

and is not unconstitutionally indefinite, relying on Jennings v. Rodriguez, 583 U.S. 281, 303 (2018), and Demore v. Kim, 538 U.S. 510, 531 (2003). ECF No. 10 at 2-6. Finally, Respondent asserts that the petition should be dismissed because Petitioner has not exhausted his administrative remedies by requesting a "Joseph hearing" in immigration court to challenge the factual basis for his 1226(c) detention. ECF No. 10 at 6 (citing Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999)).

The record information relied upon by Respondent was submitted to the Court on May 21, 2026. ECF Nos. 6-1; 6-2; 6-3; 6-4. Petitioner's I-213 Form indicates that he has no tattoos but states he "has been documented by the government of El Salvador as a MS-13 member." ECF No. 6-1 at 3. In this same document, Petitioner denies being a gang member. Id. Petitioner's Rap Sheet indicates that his fingerprints were provided to the Department of Homeland Security "to assist with identification" on November 17, 2011. ECF No. 6-2 at 3. This Rap Sheet entry further indicates that "no law enforcement action should be taken based on this cycle[.]" Id.

The record also contains an arrest warrant from the Specialized Examining Magistrates' Court of San Salvador and dated April 4, 2013. It accuses Petitioner of "committing the crimes of Murder with Aggravating Circumstances, provided for and sanctioned in Article 128 and Article 129 numbers 3 and 7 of the Criminal Code[.]" ECF No. 6-3 at 1 (English translation). In the same document, two other Salvadoran nationals are accused of committing Murder with Aggravating Circumstances plus the crime of Organized Criminal Groups. ECF No. 6-3 at 1 (emphasis added). There is no description of what organized criminal group was involved in the charged offense, nor any indication that Petitioner himself (as opposed to the two other charged individuals) was alleged to be a member of this organized criminal group. Id. Put simply, MS-13 is not listed in the arrest warrant relied upon by Respondent as the apparent factual basis for Petitioner's detention pursuant to 8 U.S.C. § 1226(c).

By way of reply, Petitioner submits a declaration from a licensed attorney in El Salvador that purports to "directly refute[] the existence of any such criminal proceeding or arrest warrant

in El Salvador."[1] ECF No. 11 at 1; see also ECF No. 11 at 8-9 (Signed Letter from Jacqueline Estefany Baires Morales, translated into English). Based on this evidence, Petitioner submits that Respondent's "sole basis for mandatory detention is factually unsupported and unreliable." ECF No. 11 at 1. Petitioner further submits that "Attorney Baires Morales is now in the process of requesting a nationwide certification from the Fiscalía General de la República (the Attorney General's Office of El Salvador) to confirm the absence of any criminal complaints against Petitioner anywhere in the country." Id. at 2. Based on the contradicted evidence in the record, Respondent has not demonstrated that Petitioner's detention is justified based on being a flight risk or danger to the community. Id. at 3. "Respondent has offered no other evidence—no tattoos, no prior admissions, no testimony—to support the claim of gang affiliation." Id. at 4. Finally, Petitioner "unequivocally denies any current or past membership or affiliation with MS-13 or any other gang." Id. at 5.

The Salvadoran attorney declaration submitted by Petitioner with his reply indicates that she "reviewed the criminal case intake books from the year 2020 up to the current date and found no criminal proceedings initiated against Juan Ernesto Baires Benitez in the records of either Peace Court of the District of Sensuntepeque, Municipality of Cabañas Este, Department of Cabañas." ECF No. 8. It further explains that "under the laws of El Salvador in criminal matters, Article 57 of the Criminal Procedural Code provides that the competent judge to prosecute the accused is the judge of the place where the punishable act was committed, and considering as a premise that in his place of residence no criminal offense has been found against him within the last twenty-six years," a request was filed with the Salvadoran Attorney General's Office to determine Petitioner's "legal status in El Salvador." Id. at 8.

## II. Statutory Immigration Standards

According to Respondent, Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c). That provision states that the Attorney General "shall take into custody any

[1] Petitioner also explains the delay in obtaining this evidence due to his detention status. ECF No. 11 at 4 (explaining that "as a pro se individual detained in the United States, he did not have the immediate ability or resources to obtain official records from the judicial system of El Salvador.").

[noncitizen] who" is inadmissible pursuant to 8 U.S.C. § 1182(a)(3)(B) for (I) engaging in a terrorist activity; (II) being identified by the Attorney General or Secretary of the Department of Homeland Security as having engaged in or likely to engage in any terrorist activity after entry; (III) inciting terrorist activity; (IV) being a representative or (V)-(VI) a member of a terrorist organization; (VII) persuading others to endorse or espouse terrorist activity; (VIII) receiving military-type training from … a terrorist organization; or (IX) being the spouse or child of a noncitizen who is inadmissible under this subparagraph if the terrorist activity occurred within the last five years. 8 U.S.C. § 1226(c). A "terrorist organization" is defined in 8 U.S.C. § 1182(a)(3)(B)(vi)(I) to include "an organization … designated under section 1189 of this title [Title 8 of the United States Code.]" The Secretary of State designated MS-13 to be a terrorist organization on February 20, 2025. ECF No. 6-4 at 3.

A noncitizen detained pursuant to 8 U.S.C. §1226(c) may be released "only if the Attorney General decides" both that doing so is necessary for witness-protection purposes and that the noncitizen will not pose a danger or flight risk, § 1226(c)(2). Jennings v. Rodriguez, 583 U.S. 281, 303 (2018) (citing 8 U.S.C. § 1226(c)(2)) (emphasis in original).

## III. Analysis

First, the undersigned notes that the evidentiary record in this case has been further developed since the denial of the TRO. As a result, the findings at the initial TRO stage are not law of the case. Therefore, the undersigned reviews the pending § 2241 claims anew on a fully developed record. Having reviewed the documents submitted by both parties pertaining to Petitioner's gang affiliation, the undersigned concludes that these documents create more questions than they answer.

Turning first to the 2013 arrest warrant submitted by Respondent, the undersigned finds that it does not charge Petitioner with committing the crime of Organized Criminal Groups, much less indicates that the murder charge was connected to any gang activity. Even if it did, there is no direct evidence that the criminal group identified in the arrest warrant is in fact MS-13. There is simply a cavernous evidentiary gap linking Petitioner to MS-13. Put simply, MS-13 is not listed in the arrest warrant relied upon by Respondent as the factual basis for Petitioner's

detention pursuant to 8 U.S.C. § 1226(c).

Petitioner's declaration from a Salvadoran lawyer challenges Respondent's contention that Petitioner is connected to MS-13 based on the arrest warrant, but it does so on a factually questionable basis. Since the arrest warrant does not describe the location where the murder charge occurred or when, the declaration indicates that only criminal records from the Municipality where Petitioner resided were searched. Moreover, the date range that was searched began with 2020 and therefore does not include the 2013 date of the arrest warrant. ECF No. 11 at 8 (describing that "the criminal case intake books from the year 2020 up to the current date" were reviewed by the declarant). While the declaration concludes that "in [Petitioner's] place of residence no criminal offense has been found against him within the last twenty-six years[,]" it is not clear that there is a foundation for that assertion given that the records searched began in 2020. ECF No. 11 at 8.

If Petitioner's alleged membership in MS-13 were a dispositive issue in resolving the Petition, the appropriate next step would be to convene an evidentiary hearing to further develop the evidentiary record.[2] As the Ninth Circuit has recognized, "[d]etermining whether an individual is an active gang member presents a considerable risk of error. The informal structure of gangs, the often fleeting nature of gang membership, and the lack of objective criteria in making the assessment all heighten the need for careful factfinding." Vasquez v. Rackauckas, 734 F.3d 1025, 1046 (9th Cir. 2013); see also Saravia v. Sessions, 280 F. Supp. 3d 1168, 1199 (N.D. Cal. 2017) (finding, after an evidentiary hearing, that "DHS sometimes makes an inference of [MS-13] gang membership from conduct, clothing, or associations that are far from unequivocal evidence of that conclusion"), aff'd 905 F.3d 1137 (9th Cir. 2018). However, as explained below, other documents in the record show clearly that Petitioner cannot be detained pursuant to § 1226(c) and that any authority for his detention is under § 1226(a).

---

[2] The undersigned is nonetheless concerned by Respondent's apparent reliance on the arrest warrant issued by the government of El Salvador from 2013 as the basis for asserting Petitioner's MS-13 membership. There is nothing on the face of the warrant connecting the charges to MS-13 in particular, and Petitioner himself is not charged with organized criminal activity. Additionally, there is no evidence in Petitioner's Rap Sheet or I-213 that links him to MS-13. Nor does Petitioner have any criminal record in the United States that would link him to gang activity.

The notice to appear ("NTA") that DHS served on Petitioner and relied on in prosecuting his removal proceedings does not charge him with inadmissibility under § 1182(a)(3)(B), the terrorist-related inadmissibility ground. Rather, DHS charged him only under § 1182(a)(6)(A)(i), as "a [non-citizen] present in the United States who has not been admitted or paroled[.]" See ECF No. 6-1 at 2; ECF No. 16-1 at 1-2. Consistent with the INA and BIA precedent, DHS cannot purport to subject an individual to mandatory detention under § 1226(c) pursuant to an uncharged ground of admissibility or deportability.

> The NTA must specify "[t]he nature of the proceedings against the [noncitizen]," "the legal authority under which the proceedings are conducted," and "the acts of conduct alleged to be in violation of the law." 8 U.S.C. § 1229(a)(1). In In re Kotliar, 24 I&N Dec. 124 (March 21, 2007), the BIA emphasized the importance of including in the NTA any ground for removal that "subjects [a noncitizen] to mandatory detention." Id. at 127. This is because the "charging document serves as notice to the alien of the circumstances relied on by the DHS to detain him." Id.

Mendez Lopez v. Warden, Central Valley Annex, No. 1:26-cv-7423 JDP, 2026 WL 3034260, at *2 (E.D. Cal. Oct. 9, 2026). Without a charge qualifying for § 1226(c) detention in the NTA, "Respondent's assertion of [§ 1226(c)(1)(D)] detention appears to be a position taken for purposes of this litigation." Vargas-Lopez v. Warden, California City Detention Ctr., No. 1:26-cv-05014 DAD SCR, 2026 WL 3082858, at *3 (E.D. Cal. Oct. 15, 2026), report and recommendation adopted, 2026 WL 3190283 (E.D. Cal. Oct. 23, 2026). Numerous judges in this District have found that the NTA must contain the "administrative charge" triggering the application of § 1226(c) "as [a] prerequisite to mandatory detention under that provision." Guevara-Ayala v. Warden, California City Detention Ctr., No. 1:26-cv-7029 DC CSK, 2026 WL 3033621, at *3 (E.D. Cal. Oct. 9, 2026), report and recommendation adopted in part, 2026 WL 3334081, at *1 (E.D. Cal. Nov. 4, 2026) (rejecting the respondent's "object[ion] to the recommendation that 8 U.S.C. § 1226(c)(1)(A) requires an administrative charge under § 1182(a)(2) as a prerequisite to mandatory detention"); see also Betancourt Ulloa v. Warden, California City Correctional Ctr., No. 1:26-CV-03360-DAD-CKD, 2026 WL 2389805, at *1 (E.D. Cal. Aug. 17, 2026) ("a post hoc rationalization cannot be the basis for petitioner's continued detention" under § 1226(c)); Christopher B.P. v. Warden, Central Valley Annex, No. 1:26-cv-06804-TLN-AC, 2026 WL 3408400, at *3 (E.D. Cal. Nov. 10, 2026) ("The operative

Notice to Appear does not state that Petitioner is charged with inadmissibility under § 1182(a)(2), nor does it reference his criminal conviction. … In other words, the operative Notice to Appear does not charge or notify Petitioner of any offense giving rise to detention under 8 U.S.C. § 1226(c)(1)(A)."); Colmenares-Pinto v. Warden of Golden State Annex, No. 1:26-CV-00812 DAD SCR, 2026 WL 923804, at *2 (E.D. Cal. Apr. 6, 2026) ("[T]he plain language of 8 U.S.C. § 1226(c)(1)(A) requires an administrative charge of inadmissibility by reason of having committed an offense covered in 8 U.S.C. § 1182(a)(2) as prerequisite to mandatory detention under that provision."), report and recommendation adopted, No. 1:26-CV-00812-DAD-SCR, 2026 WL 1430913 (E.D. Cal. May 21, 2026); Miao v. Chestnut, No. 1:26-cv-01271-KES-SKO (HC), 2026 WL 947020, at *2 (E.D. Cal. Apr. 8, 2026) (finding the petitioner was not properly subject to mandatory detention pursuant to § 1226(c)(1)(A) in part because the NTA did not charge him with inadmissibility pursuant to § 1182(a)(2)).

Accordingly, the undersigned finds that Petitioner is not subject to mandatory detention pursuant to § 1226(c). For this same reason, the undersigned rejects the argument that the § 2241 petition should be dismissed because Petitioner has not exhausted his administrative remedies by asking an IJ to review DHS's mandatory detention determination at a Joseph hearing—there is no such determination to bring before an IJ. ECF No. 10 at 6.

Having so concluded, the only remaining statutory basis for Petitioner's immigration detention is the general detention statute of 8 U.S.C. § 1226(a), which provides "substantial procedural protections," Rodriguez Diaz v. Garland, 53 F.4th 1189, 1193 (9th Cir. 2022), including the right to request an initial custody re-determination before an IJ under 8 C.F.R. § 1236.1(d). However, Petitioner was denied those statutory protections for the approximately seven months of his civil immigration detention, which constitutes a separate procedural due process violation. See Feng v. Lyons, No. 1:26-cv-0235 DJC SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (finding that the "provision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right."). Therefore, Petitioner is entitled to habeas corpus relief.

In determining the proper remedy for this due process violation, the undersigned is cognizant of the facts surrounding Petitioner's April 2026 arrest. ICE was not the law enforcement agency who initially arrested Petitioner. ICE was contacted by the U.S. Marshal Service ("USMS") in December 2025 informing the agency of Petitioner's arrest warrant from El Salvador. ECF No. 6-1 at 2. ICE sat on this information and did nothing with it for four months. Id. Petitioner was eventually arrested by the Mendota Police Department on April 13, 2026 for being under the influence of a controlled substance in public. ECF No. 6-1 at 2. They ran Petitioner's information through the NCIC database "which revealed a USMS fugitive alert." Id. After being released on a summons, the U.S. Marshals Service took Petitioner into custody and contacted ICE. Id. However, there is nothing in the record indicating that the government has initiated extradition proceedings against Petitioner or that Petitioner is subject to a USMS detainer. Nor is there anything to indicate that Petitioner poses an exigent danger or a risk of flight, particularly given that he lived in the United States for sixteen years without incident, prior to the arrest for being under the influence.

Federal courts have "a fair amount of flexibility" in fashioning specific habeas relief. Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005). Therefore, the undersigned finds that the appropriate remedy in this case is to order Petitioner released from immigration custody subject to standard conditions of release, which may include electronic monitoring. This remedy places Petitioner back in the legal position that he was in prior to his unlawful detention.

Accordingly, IT IS HEREBY ORDERED that Petitioner's motions to expedite these proceedings (ECF Nos. 12-13) are granted.

IT IS FURTHER RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be GRANTED.

2. Respondent be ordered to immediately release Petitioner JUAN ERNESTO BAIRES BENITEZ, (A#240-174-042), from their custody. Respondent may impose standard conditions of release on Petitioner.

3. Respondent shall turn over all of Petitioner's documents and possessions at the time of his release from immigration detention.

4. Respondent be directed to file a notice certifying compliance with the above provisions within three (3) days from the date of any final order requiring release.

5. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days of notice to Petitioner and provide Petitioner with a bond hearing before an immigration judge at which the government must prove by clear and convincing evidence that petitioner is a flight risk or danger to the community such that his re-detention is warranted.

6. The final order entered in this case not address the circumstances in which Respondent may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

7. Judgment be entered in Petitioner's favor and this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **three days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 12, 2026



SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE